Lee F. Bantle
Sherie N. Buell
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

PETER BRYAN,

              Plaintiff,

- against -

THE GAP, INC. and THE GAP INC. VOLUNTARY
SEVERANCE PLAN,

              Defendant.

-----------------------------------------------------------------x

No. 18 Civ. 00874
ECF Case

**COMPLAINT
AND JURY DEMAND**

Plaintiff Peter Bryan, by his attorneys, Bantle & Levy LLP, as and for his complaint against defendants, The Gap, Inc. and The Gap, Inc. Voluntary Severance Plan, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for violations of federal law arising from Defendant The Gap, Inc.'s failure to provide severance plan documents and to pay benefits to Plaintiff following his discharge from employment in March 2017. This action is brought pursuant to Sections 502(a)(1)(b) and 502(c) of the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c). This is also an action for violations of New York City law arising from employment discrimination based on race and national origin pursuant to the New York City Administrative Code § 8-101 et seq., (the

"NYCHRL"). Plaintiff seeks to remedy the improper denial of Plaintiff's ERISA-governed benefits in addition to declaratory and injunctive relief and damages.

2. Plaintiff, Peter Bryan ("Bryan"), was subjected to discrimination based on his race and national origin by The Gap, Inc. ("The Gap"), with such discriminatory treatment culminating in the abrupt and unlawful termination of his employment as a Loss Prevention Agent at The Gap's store on 48th Street and 6th Avenue in New York City, New York. Subsequent to his termination, Plaintiff was denied severance benefits and denied access to the governing documents of the Company's severance plan, in violation of ERISA.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), ERISA § 502(e) and (f), and 29 U.S.C. § 1132(e) and (f).

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1332, as the matter in controversy as a result of the lost wages, compensatory damages and punitive damages exceeds $75,000. Plaintiff is a citizen of the State of New York. The corporate Defendant is a citizen of the States of Delaware and California.

5. In addition, plaintiff asserts city anti-discrimination law claims under this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

6. A substantial part of the acts giving rise to this action were committed within the district of the United States District Court, Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. § 1391(b). In addition, venue is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Defendant The Gap's benefit plans are administered at least in part in this District.

7. Plaintiff has mailed a copy of this complaint to the Corporation Counsel for the City of New York and to the New York City Commission on Human Rights as required under New York City Administrative Code, §8-502.

## PARTIES

8. Plaintiff Peter Bryan is a Black man, born in Jamaica, and a citizen of the United States. Bryan currently resides in the Bronx, New York.

9. Upon information and belief, defendant The Gap is a business corporation organized and existing under the laws of Delaware, with its principal executive office in San Francisco, California.

10. Upon information and belief, The Gap Inc. Voluntary Severance Plan (the "Plan") is a severance plan sponsored by The Gap that provides severance benefits to employees of The Gap.

11. Defendant The Gap is a person within the meaning of New York City Administrative Code § 8-102(1), and an employer within the meaning of New York City Administrative Code §§ 8-102(5) and 8-107.

12. Defendant The Gap is the plan sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Upon information and belief, Defendant The Gap is also the plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

## STATEMENT OF FACTS

Bryan's Employment at The Gap

13. Bryan commenced employment with The Gap in or about September 1995 as a Loss Prevention Agent.

14. Throughout his 21-year tenure with The Gap, Bryan always received good performance reviews and was an exemplary employee.

15. Prior to his abrupt termination in March 2017, Bryan was never issued oral or written warnings or discipline of any kind.

16. Bryan was, however, subjected to discriminatory treatment in the workplace based on his Jamaican accent, race, and national origin.

17. Though Plaintiff is articulate and speaks English clearly, on numerous occasions while he was employed at The Gap, supervisors, including Bryan's most recent supervisor, Patrick Eidinger, made comments to Bryan about his accent.

18. Specifically, Bryan was told that "your accent is too heavy," that "I can't understand you," and that "I didn't understand a word you just said."

19. Upon information and belief, Bryan was never considered for numerous promotional opportunities that he expressed interest in based on his accent, race, and national origin.

Bryan Confronts Apparent Shoplifter in The Gap

20. On or about March 8, 2017, Bryan was working at The Gap store on 48th Street and Sixth Avenue when he noticed on the store's closed circuit television a customer attempting to steal merchandise.

21. Specifically, Bryan noticed that the customer was picking up Gap merchandise, including several Gap duffel bags, and stuffing them into a white bag that the customer had brought with him into the store.

22. Bryan also noticed that the customer appeared agitated as if he might be under the influence of drugs.

23. In order to prevent a potential theft of Gap merchandise, Bryan approached the customer as the customer was about to enter a dressing room with the Gap clothing and Gap duffel bags hidden inside his own white bag.

24. When Bryan approached the customer, Bryan offered to take the duffel bags up to the counter for the customer for purchase, a loss prevention strategy consistent with Company policy.

25. The customer suddenly became violent with Bryan, shoving him twice and then grabbing him.

26. To protect himself, Bryan grabbed the customer by his shirt.

27. The customer then aggressively punched and shoved Bryan, pulling back and breaking Bryan's fingernails on one hand and causing Bryan to bleed excessively.

28. After seeing the blood coming from his fingernails, Bryan shoved the customer away with his foot and the customer ran out of the store.

29. Upon information and belief, much, if not all, of this incident is recorded on videotape.

30. Following the incident, a number of store employees who witnessed the events wrote reports stating that Bryan had acted in self-defense.

Bryan Is Denied the Opportunity to Explain His Actions and Abruptly Terminated

31. Several days after the incident, when Bryan reported to work, the Company's Regional Loss Prevention Manager, Patrick Eidinger, informed Bryan that the Company had made a decision to terminate his employment.

32. Upon information and belief, the Company acted in a discriminatory fashion in discharging Bryan over this incident.

5

33. Upon information and belief, the Company used this incident as a pretext for discharge.

34. Bryan acted appropriately in protecting the Company's interests and defending himself from assault and battery.

35. There was no legitimate business reason for the termination of Bryan's employment.

36. Upon information and belief, on a number of occasions, security employees who were neither Jamaican nor Black were involved in altercations provoked by customers and were not discharged.

37. Upon information and belief, in each of these cases, the security employees involved were either sent to additional training or were given written warnings.

38. Upon information and belief, the fact that Bryan is a Black man of Jamaican origin who speaks with an accent was a motivating factor in The Gap's decision to terminate Bryan's employment.

39. As a result of The Gap's discriminatory termination of his employment, Bryan was denied income and benefits, continuing opportunities for promotion, advancement, recognition, and increased compensation he would have received had he not been terminated.

40. As a result of Defendant's discriminatory termination of his employment, Bryan has further sustained severe mental and emotional harm and distress.

41. The aforesaid acts and conduct by The Gap, its agents and employees, were performed willfully, intentionally, maliciously and with reckless indifference to plaintiff's protected rights.

The Gap Denies Bryan Severance and Access to the Company's Severance Plan

42. On or about July 13, 2017, Plaintiff's counsel wrote to The Gap and requested in writing a copy of the Plan and other instruments pursuant to which the Plan is operated, to which Plaintiff is entitled under ERISA §§ 104(b)(4) and 105, 29 U.S.C. §§ 1024(b)(4) and 29 U.S.C. 1025.

43. On September 12, 2017, counsel for The Gap responded by email that the Company refused to produce the severance plan on the basis that "the plan has not been triggered by [plaintiff's] termination."

44. On information and belief, the Plan provides for payment of severance benefits to employees of The Gap who are involuntarily terminated without cause.

45. As of the date of filing this Complaint, Plaintiff has not received the requested Plan or related plan documents to which he is entitled.

46. Because Defendant The Gap refused to provide Plaintiff any Plan documents on the grounds that he is not a participant, Plaintiff has been unable to meaningfully pursue, let alone exhaust, his administrative remedies under the Plan. Because Defendant The Gap has clearly asserted that he is not a participant under the Plan, such exhaustion would be futile.

**FIRST CAUSE OF ACTION**
*Discrimination on the Basis of Plaintiff's Race and National Origin,
pursuant to the NYCHRL, § 8-101 et seq.*

47. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48. As a result of Defendant's aforesaid acts, Defendant discriminated against Plaintiff on account of his race and national origin in violation of the New York City Administrative Code § 8-107 when Defendant terminated his employment.

49. As a result of Defendant's discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, termination, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## SECOND CAUSE OF ACTION
*Claim for Penalties for Document Disclosure Violations*
*Pursuant to ERISA, § 502(c), 29 U.S.C. § 1132(c)*

50. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51. ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), provides that a plan administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

52. ERISA § 502(c), 29 U.S.C. § 1132(c), provides that any administrator who fails or refuses to comply with a request for any information which such administrator is required by ERISA to furnish to a participant or beneficiary by mailing the material requested to the latest known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

53. 29 C.F.R. § 2575.502(c)-(1) increases the penalty under ERISA § 502(c) to $110 per day.

54. At all relevant times, Bryan was a participant within the meaning of the Plan.

55. Defendant The Gap, as sponsor of the Plan, has failed or refused to comply fully with Mr. Bryan's request pursuant to ERISA § 104(b)(4) from August 14, 2017 to the present.

56. Plaintiff seeks relief as prayed for below.

### THIRD CAUSE OF ACTION
*Claim for Benefits Under the Terms of the Plan,*
*Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)*

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

59. Upon information and belief, the terms of the Plan provide that Plaintiff, as an involuntarily terminated employee of The Gap, is entitled to severance benefits under the Plan because his termination was not for cause.

60. Defendants have violated the terms of the Plan and the statute, and Plaintiff's rights thereunder, by denying Plaintiff access to the Plan's claims procedures and refusing to pay him benefits under the terms of the Plan.

61. Plaintiff seeks relief as prayed for below.

### JURY DEMAND

62. Plaintiff hereby demands trial by jury for Plaintiff's First Cause of Action, discrimination on the basis of race and national origin pursuant to the NYCHRL, § 8-101 et seq.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendants:

(1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by the New York City Administrative Code, § 8-101 et seq.;

(2) A declaratory judgment that Plaintiff is entitled to severance benefits under The Gap Plan;

(3) Penalty of $110 per day for each day from August 14, 2017 to the day that The Gap provides to Mr. Bryan the Plan documents required to be provided under ERISA § 104(b)(4);

(4) An injunction restraining and enjoining defendants from engaging in further discriminatory acts;

(5) Reinstatement to the highest position to which Plaintiff was and would be entitled and/or front pay;

(6) Actual damages in the form of (a) back pay with interest based on Plaintiff's appropriate compensation had he not been wrongfully demoted and terminated; (b) reimbursement for lost bonuses, stock, health benefits, 401(k) contributions, social security, experience, training opportunities, and other benefits; in an amount to be proved at trial;

(7) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial, but believed to exceed $250,000;

(8) Punitive damages in an amount not less than $250,000;

(9) Attorneys' fees, costs and disbursements;

(10)  Interest; and

(11)  Such additional relief to Plaintiff as the Court deems just and proper.

Dated: January 31, 2018
   New York, New York

BANTLE & LEVY LLP

Sherie N. Buell
Lee F. Bantle
817 Broadway
New York, NY 10003
(212) 228-9666
*Attorneys for Plaintiff*